CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 23 2022

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| LAWRENCE S., ) | |
| ) | |
| Plaintiff ) | Civil Action No. 5:20-CV-34 |
| ) | |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security, ) | By: Michael F. Urbanski |
| ) | Chief United States District Judge |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on January 31, 2022, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Lawrence S. (Lawrence) has filed objections to the R&R and this matter is now ripe for the court's consideration.

### I. Background

Lawrence filed an application for disability insurance benefits on August 21, 2013, alleging disability beginning on September 23, 2011. Lawrence was 53 years old at the alleged onset date and his "date last insured" (DLI) was December 31, 2013. He seeks disability based on a traumatic brain injury, fibromyalgia, attention deficit disorder, bi-polar disorder, diabetes, heart disease, high blood pressure, sleep apnea, back problems described as "lumbar

myofascial, spondylosis, herniation, annular tear," rotator cuff syndrome, and post-concussion syndrome. R. 188. Lawrence proceeded through the administrative process and his application was denied. On June 7, 2016, Lawrence appeared at a hearing in front of an administrative law judge (ALJ). Following the hearing, the ALJ issued an unfavorable decision and the Appeals Council declined review.

Lawrence filed a lawsuit seeking judicial review of the denial. Lawrence v. Berryhill, No. 5:17cv96 (W.D. Va. Mar. 31, 2019). The court remanded Lawrence's case to the Commissioner for further proceedings and the Appeals Council assigned the case to a new ALJ for another hearing. On December 23, 2019, Lawrence appeared with counsel and testified at a second ALJ hearing. A vocational expert also testified.

The ALJ found that Lawrence had not engaged in significant gainful activity from his alleged onset date of September 23, 2011, though his date last insured of December 31, 2013. The ALJ next found that Lawrence had severe impairments of degenerative disc disease of the lumbar and cervical spine, degenerative joint disease status post rotator cuff repair, tumor of the lumbar spine, brain injury, post-concussion syndrome, coronary artery disease, and obesity, but that none of his impairments met or equaled a listed impairment. The ALJ found that Lawrence had the residual functional capacity (RFC) to perform light work with additional limitations of only frequently climbing ramps and stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; occasionally climbing ladders, ropes, and scaffolds; frequent use of either upper extremity for overhead reaching; and that he must avoid concentrated exposure to extreme cold, wet, or damp conditions or working at unprotected heights. Lawrence was able to understand and remember simple, routine instructions and carry out

repetitive tasks, make simple, work-related decisions, and was able to deal with minor, or few, changes in a routine work setting. He was not able to work on an assembly line or perform work involving a strict production rate pace. He would be off task ten percent of the workday and would be absent 10 days per year.

Relying on this RFC and the testimony of a vocational expert, the ALJ determined that Lawrence could not return to his past relevant work as a general contractor, but could do the work of a final inspector, final assembler, or racker, and that such jobs exist in significant numbers in the national economy. Therefore, the ALJ concluded that Lawrence was not disabled. R. 2030-46. The Appeals Council did not exercise its discretion to review the ALJ decision, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Lawrence objects to the finding that the ALJ properly considered his subjective complaints. ECF No. 24.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

3

sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. April 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir. 2010) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety

4

of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

5

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objection[2]

Lawrence objects to the magistrate judge's finding that the ALJ properly considered his daily activities in the RFC analysis. In the first opinion issued in this case, the court found that the ALJ's analysis of Lawrence's subjective allegations was perfunctory and incomplete as he did not cite to medical records to support his conclusion that Lawrence's examination findings were "generally normal" and did not explain how the consistently abnormal findings on lumbar exams factored into his conclusion that Lawrence could do medium work. See Lawrence S. v. Berryhill, No. 5:17-cv-96 at ECF No. 17 at 10-12 (located herein at R. 2131-33).

The ALJ also noted that Lawrence was lifting heavy weights during the requisite period. The court found that observation to be accurate, but incomplete, as Lawrence was a competitive weightlifter and in the months after his right shoulder surgery, his shoulder again became symptomatic. Lawrence consistently stated that he had difficulty reaching overhead, and he was unable to lift weights beginning in late 2012 or early 2013, and the record did not indicate that he ever regained the ability to lift weights. R. 2133. The court found that the ALJ did not explain how he considered the fact that Lawrence's ability to use his arms changed after his shoulder surgery. Id.

In addition, the court found that the ALJ's discussion of two of Lawrence's activities, driving and cooking, was inadequate. Lawrence stated that he could do those activities when he was able to and not in debilitating pain, but the ALJ did not acknowledge the limited extent

---

[2] Detailed facts about Lawrence's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 23) and in the administrative transcript (ECF No. 14) and will not be repeated here except as necessary to address his objections.

of the activities. R. 2135. The court also found that the ALJ's citing of Lawrence's ability to manage his personal care such as dressing, bathing, caring for his hair, shaving, and feeding himself provided little support for the ALJ to find that Lawrence could do medium work. R. 2136.

When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id., SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources, and other sources are considered. Id. 2017 WL 5180304, at *6.

The ALJ considers a claimant's statement about symptoms, and any description by medical sources or nonmedical sources about how the symptoms affect activities of daily living and the ability to work. However, statements about symptoms alone will not establish disability. 20 C.F.R. § 404.1529(a).

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory

8

findings and other evidence to decide how your symptoms affect your ability to work.

Id. When an ALJ looks at a claimant's daily activities as a part of the assessment of whether a claimant's statements about his symptoms are credible, an ALJ must not only consider the type of activities a claimant can perform but also the extent to which he can perform them. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (citing Brown v. Commissioner, 873 F.3d 251, 263 (4th Cir. 2017)).

After remand, in the ALJ opinion issued in 2020, the ALJ stated the following with regard to Lawrence's daily activities:

> Aside from the medical evidence, the claimant's reported activities and abilities are not fully consistent with a finding of disability. The claimant reported that, during good days, [he] is able to perform a wide range of daily activities. He reported he is able to tend to his personal care and hygiene, clean his home, run errands, care for his disabled child, prepare meals and shop in stores. He reported he is able to maintain his finances and handle his prescriptions, medical appointments and insurance. He also reported he is able to get around by walking and driving his car[], as well as attend church and family gathering[s]. He also reported lifting heavy weights and competing in power lifting competitions prior to his shoulder surgery. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The undersigned finds the claimant's ability to participate in such activities diminishes the persuasiveness of the claimant's allegations of functional limitations.

R. 2041.

The magistrate noted that in addition to the daily activities cited by the ALJ, Lawrence also testified that he was limited in performing many of his daily activities. He could handle his finances when he was doing well, but his wife usually handled them. His memory difficulties caused him to leave things cooking on the stove and his ability to clean was limited. Nevertheless, the magistrate judge found that the ALJ considered many of Lawrence's

9

limitations throughout his decision, such as noting that Lawrence had improvement in his left shoulder pain after surgery and was able to resume power lifting. While he testified that his shoulder continued to produce symptoms, the evidence did not show imaging or significant exam findings during the relevant period. Regarding his ability to stand and walk, although Lawrence testified that he had limitations standing and walking, he regularly walked with a normal gait, could heel, toe, and tandem walk, and showed intact extremity strength and sensation. R&R, ECF No. 23 at 18-19.

In his objections, Lawrence argues that both the ALJ and the magistrate judge failed to note that Lawrence testified that he only performed the household tasks he could manage and that he could not manage his medications, which resulted in an accidental overdose. R. 2089-90; 2103-04. However, the ALJ acknowledge that Lawrence testified that he could do a wide variety of activities on his "good days," and Lawrence's testimony supports that finding. In response to a question from his attorney about whether he was able to do household chores during the relevant period, he testified that he cooked and did a little bit of cleaning and "anything that needed to be done, [he] would try to do it." R. 2103. He indicated that he picked up after himself and tried to wash dishes and make the bed. R. 2102-03. He also testified that he drove during that time period, although in 2013 he stopped driving for a couple of years because he "messed up" his license due to memory problems. R. 2105. In addition, the ALJ accommodated Lawrence's physical impairments by limiting him to light work with additional postural and environmental limitations and noting that he would be off task ten percent of the workday and absent 10 days per year. The court finds that these restrictions are consistent with Lawrence's report of his daily activities.

Regarding the accidental drug overdose, Lawrence testified that between his prescription drugs and his "vitamins, minerals and whatever," he was taking between 130-140 pills per day." R. 2089. He stated that one day he accidentally took three days of pills at one time, including 1500 milligrams of mostly oxycontin and had to go to the emergency room. R. 2089-90. While Lawrence is correct that the ALJ did not cite to this testimony,[3] the ALJ did accommodate Lawrence's reports of memory loss by restricting him to understanding and remembering simple, routine instructions and carrying out repetitive tasks, making simple work-related decisions, and dealing with minor, or few, changes in a routine work setting. The court finds that the ALJ acknowledged Lawrence's description of his mental limitations and accommodated them with the RFC to the extent they were supported by other evidence in the record.

In accordance with the foregoing, the court agrees with the magistrate judge's finding that the ALJ properly assessed Lawrence's reported activities of daily living as part of his RFC determination. Accordingly, Lawrence's objection to this finding is **OVERRULED**.

---

[3] It is possible that the ALJ simply dismissed this testimony as not credible. Indeed, it strains believability to find that a person could "accidentally" take 390-420 pills at one time, or that he was prescribed 500 mg. of Oxycontin per day. Oxycontin in prescribed in pills containing 10 mg. to 80 mg. with total daily doses of 80 mg. prescribed only for patients in whom a tolerance to an opioid of comparable potency has been established. https://www.rxlist.com/oxycontin-drug.htm#dosage (last viewed Feb. 21, 2022). The record indicates that Lawrence was started on 30 mg. of Oxycontin on November 29, 2012. R. 346. On July 18, 2013 one of his doctors expressed concern that Lawrence was taking 120 mg. of Oxycontin per day and said he needed to "get [] off of that." R. 427. In December 2013 it was noted that he was taking between 120 mg. and 180 mg. per day. R. 786, 790. There is no indication that Lawrence ever was prescribed 500 mg. of Oxycontin per day.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. Therefore, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 02-23-2022

Michael F. Urbanski
Chief United States District Judge